UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RUSTY RENDON an individual, and | § | |
| JOHN PANARESE, an individual | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-10430-JMF-GWG |
| | § | |
| MILLA AND ELLA CO., LLC | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT MILLA AND ELLA CO., LLC
## ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Defendant Milla and Ella Co., LLC ("Defendant") hereby answers Plaintiffs Rusty Rendon, an individual, and John Panarese, an individual (collectively, "Plaintiffs") Complaint (the "Complaint"). Defendant will cite Plaintiffs' allegations in the Complaint and follow with its response, then plead its affirmative defenses and other defensive matters.

## NATURE OF THE ACTION

1. As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Way/air, Inc.,* 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2021 polling date, 93 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc..,* No. 17 Civ. 2744 (PAE), 2017 WL 6547902,

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited Mar. 25, 2022). Indeed, 99 percent of adults between the ages of 18-29 use the Internet, and 98 percent of adults between the ages of 30-49 use the Internet. *Id*.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

at *9 (S.D.N.Y. Dec.20.2017); *United States v. Peterson,* 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modem world of communications and information gathering.").

**RESPONSE:** This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied

2. According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.,* more than three decades ago, as well as the enactment of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.''" *Del-Orden,* 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society,* yet many people with

---

[2] In 2018, an estimated 7.6 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited Mar. 25, 2:022). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2018 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,140,203 persons who participated in the 2018 ACS.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

physical or mental disabilities have been precluded from doing so because of discrimination."' *Del-Orden,* 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(l)) (emphasis added in *Del-Orden).* "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour,* 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989) H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate', in the ADA to effect the statute's "sweeping purpose." *Id* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public''*'. *National Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n,* 37 F.3d 12, 20 (1st Cir. 1994)).

> **RESPONSE:**    This paragraph contains legal arguments to which no response is
> required. To the extent a response is required, denied.

3.    Plaintiffs are visually-impaired and legally blind persons[3] who brings this civil rights action against defendant Milla and Ella Co., LLC ("Defendant") for its failure to design,

---

[3] Plaintiffs use the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

construct, maintain, and operate its website to be fully accessible to-and independently usable by-Plaintiffs.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

4. In June 2022, Plaintiff Rendon browsed and attempted to transact business on Defendant's website, www.millaandella.com ("website" or "Defendant's website") and encountered active barriers. The main reason Plaintiff visited the website was to, *inter alia* purchase products, goods, and/or services. The website sells/offers women's clothing and accessories and related products for purchase. The website had the following accessibility issues, among other things:

    (a) Mislabeled headings.

    (b) Mislabeled and inaccessible links.

**RESPONSE:** Admitted that Defendant maintains a website with items for purchase. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

5. In October 2022, Plaintiff Panarese browsed and attempted to transact business on Defendant's website, www.millaandella.com ("website" or "Defendant's website") and encountered active barriers. The main reason Plaintiff visited the website was to, *inter alia,* purchase products, goods, and/or services. The website sells/offers women's clothing and accessories and related products for purchase. The website had the following accessibility issues, among other things:

    (c) Mislabeled headings and tags on the main page.

(d)    Mislabeled and misleading links on multiple pages provide confusing information and links to other purported information that is unrelated or unhelpful.

**RESPONSE:**    Admitted that Defendant maintains a website with items for purchase. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

6.    The accessibility issues Plaintiffs experienced are still found on Defendant's website as of the date of the filing of this complaint. Plaintiffs still intend to purchase certain goods and/or services from Defendant's website in the future, but currently cannot.

**RESPONSE:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

7.    Defendant and its website violate Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law§ 290 *et seq.,* as the website is not equally accessible to blind and visually-impaired consumers.

**RESPONSE:**    Defendant denies the allegations in this paragraph.

8.    Plaintiffs bring this action against Defendant seeking, *inter alia,* a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre- judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

**RESPONSE:**    Admitted that Plaintiffs make these claims, but otherwise denied that Plaintiffs are entitled to the relief sought.

## JURISDICTION AND VENUE

9.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Panarese's NYSHRL claims.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

11. Defendant is subject to personal jurisdiction in this District. Defendant operates and distributes its products and/or services throughout the United States, including to consumers and others in this District and thus should be subject to its violations of the ADA and the NYSHRL in this District.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

12. This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

**RESPONSE:** Admitted.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2), and (c) because: (i) Defendant's unlawful course of conduct occurred in large part in this District and throughout the State of New York, and Plaintiff Panarese attempted to utilize the website in this State.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

**PARTIES**

**Plaintiffs**

14. Plaintiff Rusty Rendon is a resident of the State of California. Plaintiff Rendon is a blind, visually- impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2)-and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

15. Plaintiff John Panarese is a resident of Hauppauge, New York. Plaintiff Panarese is a blind, visually- impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2)-and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*-and as defined under the NYSHRL.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

16. While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on Defendant's Website, Plaintiffs have a dual motivation: they are also "testers," which one federal court has defined to be 'individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.,* Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 954 (7th Cir. 2006). Plaintiffs have filed multiple lawsuits against various operators of commercial websites under the Unruh Act as part of their advocacy work on behalf

of the civil rights of visually-impaired persons. Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

**Defendant**

17. Defendant is a Texas limited liability company with its principal place of business located in Houston, Texas. Defendant conducts business in New York through its website, which is a place of public accommodation as defined under 42 U.S.C. § 12181(7).

**RESPONSE:** Admitted that Defendant is a limited liability company with its principal place of business located in Houston, Texas. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

## SUBSTANTIVE ALLEGATIONS

**The visually-impaired use screen-readers to access the Internet.**

18. In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million. The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

19.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted., blind and visually-impaired persons alike. In today's tech- savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software.

**RESPONSE:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

20.     Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and services contained thereon. As defined by the American Federation for the Blind, a refreshable Braille display used in conjunction with a computer can provide a blind person access to information on the computer screen by electronically raising and lowering different combinations of pins on internal cells. These raised pins correspond to, and adapt, as the user moves their cursor over the text on the computer screen.

**RESPONSE:**     Admitted that Defendant's website is designed to be read by screen-reading software. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

**A company's website must accommodate the use of screen readers**

21.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into

text, the blind or visually-impaired user is unable to access the same content available to sighted users.

> **RESPONSE:** Admitted that Defendant's website is designed to be read by screen-reading software. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

22. The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG"). WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually-impaired people. Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually- impaired from enjoying the Internet in the same way sighted individuals do.

> **RESPONSE:** Admitted that Defendant's website is accessible to blind and visually-impaired people. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

**Defendant's website discriminates against the visually-impaired by containing access barriers**

23. Defendant is an online retail company that owns and operates a website offering products that Defendant delivers to New York and across the country. Defendant offers its website so that, *inter alia,* the general public can transact business on it. The goods and services offered by Defendant's website include, but are not limited to: women's clothing and accessories and related products.

> **RESPONSE:** Admitted the Defendant's website offers goods including, but not limited

to, women's clothing and accessories to potential consumers. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

**RESPONSE:**    Defendant denies the allegations in this paragraph.

24.    It is Defendant's policy and practice to deny Plaintiffs access to its website, and to specifically deny the goods and services offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiffs have been-and currently are--denied equal access to the website and the goods and/or services offered thereon.

**RESPONSE:**    Defendant denies the allegations in this paragraph.

25.    Plaintiffs are visually-impaired and/or legally blind. Plaintiff Rendon uses the Mac Book Pro 16 with Voice-Over screen- reader to access websites on the Internet. During Plaintiff Rendon's visits to Defendant's website, the last occurring in June 2022, Plaintiff Rendon encountered multiple access barriers that denied Plaintiff full and equal access to the goods and/or services offered to (and made available for) the general public. These access barriers were the reason that Plaintiff Rendon was denied the full enjoyment of the goods and/or services offered on the website.

**RESPONSE:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

26.    The website had the following accessibility issues, among other things:

    (a)    Mislabeled headings.

    (b)    Mislabeled and inaccessible links.

**RESPONSE:**    Defendant denies the allegations in this paragraph.

27.     Plaintiff Rendon was highly interested in purchasing the products offered by Defendant. Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured.

**RESPONSE:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

28.     Plaintiff Panarese uses the Mac Book Pro with the latest MacOS operating systems with VoiceOver screen- reader to access websites on the Internet During Plaintiff Panarese's visits to Defendant's website, the last occurring in October 2022, Plaintiff Panarese encountered multiple access barriers that denied Plaintiff full and equal access to the goods and/or services offered to (and made available for) the general public. These access barriers were the reason that Plaintiff Panarese was denied the full enjoyment of the goods and/or services offered on the website.

**RESPONSE:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

29.     The website had the following accessibility issues, among other things:

(a)     Mislabeled headings and tags on the main page.

(b)     Mislabeled and misleading links on multiple pages provide confusing information and links to other purported information that is unrelated or unhelpful.

**RESPONSE:**     Defendant denies the allegations in this paragraph.

30.     Plaintiff Panarese was highly interested in purchasing the products offered by Defendant. Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as

Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured.

**RESPONSE:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

**Defendant must remove the website's accessibility barriers**

31.    The access barriers Plaintiffs encountered have caused a denial of Plaintiffs' full and equal access in the past, and now deter Plaintiffs on a regular basis from visiting the website, presently and in the future. These access barriers have deterred Plaintiffs from learning about the various products sold to sighted individuals because Plaintiffs were unable to determine and or purchase items from its website, among other things. If the website were equally accessible to all, Plaintiffs could independently navigate the website and complete a desired transaction as sighted individuals do.

**RESPONSE:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

32.    Plaintiffs have actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people. Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiffs equal access to the website, Plaintiffs allege that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)    constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiffs;

(b)     failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiffs; and

(c)     failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers (a protected class), including Plaintiffs.

**RESPONSE:**     Defendant denies the allegations in this paragraph.

33.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendant's website is not equally accessible-and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible----it must retain a qualified consultant acceptable to Plaintiffs to assist Defendant to comply with WCAG 2.1 guidelines for its website. Defendant must cooperate with the agreed upon consultant to:

(a)     train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

(b)     regularly check the accessibility of the website under the WCAG 2.1 guidelines;

(c)     regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

(d)     develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

**RESPONSE:**     Defendant denies the allegations in this paragraph.

34.     If the website were accessible, Plaintiffs would be able to independently view service items, and/or shop for goods via the website. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its website and has generated significant revenue thereon. The revenues procured by Defendant far exceed the associated cost of making the website equally accessible to visually-impaired consumers.

**RESPONSE:**     Defendant denies the allegations in this paragraph.


## COUNT I

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.,* on behalf of Plaintiffs**

35.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

**RESPONSE:**     This paragraph does not require a responsive pleading, but to the extent it does, Defendant incorporates its prior responses.

36.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities) privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

**RESPONSE:**     This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

37.     Defendant's website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7). The website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

**RESPONSE:** Admitted the Defendant's website is equally accessible to all potential consumers. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

38.    Under 42 U.S.C. § 12182(b)(l)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in - or benefit from - the products, services, facilities, privileges, advantages, or accommodations of an entity.

**RESPONSE:** This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

39.    Under 42 U.S.C. § 1 2182(b)( 1 )(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

**RESPONSE:** This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

40.    Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes, among other things: "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities... and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded..."

**RESPONSE:** This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

41. Plaintiffs are members of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(l)(A)-(2)(A).

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

42. Furthermore, Plaintiffs have been denied full and equal access to the website, have not been provided goods and/or services that are provided to other patrons who are not disabled, and have been provided goods and/or services that are inferior to the services provided to non-disabled persons.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations which are, therefore, denied.

43. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

**RESPONSE:** Defendant denies the allegations in this paragraph.

## COUNT II

**Against Defendant for Violations of the New York State Human Rights Law, N.Y. Exec. Law§ 290 *et seq.*, on behalf of Plaintiff Panarese**

44. Plaintiff Panarese incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

**RESPONSE:** This paragraph does not require a responsive pleading, but to the extent it does, Defendant incorporates its responses.

45.     N.Y. Exec. Law§ 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof "

**RESPONSE:**     This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

46.     Defendant's Website is a public accommodation, service, privilege and/or advantage of Defendant within the meaning of the NYSHRL.

**RESPONSE:**     This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

47.     Defendant is subject to NYSHRL because it owns and operates a public accommodation, its Website, which is generally accessible and available in the state of New York. Defendant is a person within the meaning of N.Y. Exec. Law§ 292(1).

**RESPONSE:**     This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

48.     Defendant is violating N.Y. Exec. Law§ 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website to be completely inaccessible to the blind and visually-impaired. This accessibility denies blind and visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public.

**RESPONSE:**     Defendant denies the allegations in this paragraph.

49.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

**RESPONSE:**    This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

50.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

**RESPONSE:**    This paragraph contains legal arguments to which no response is required. To the extent a response is required, denied.

51.     As set forth above, the international website standards organization, W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.1 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible

alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader. By contrast, incorporating these basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

> **RESPONSE:**    Admitted that Defendant's website is accessible to a blind or visually-impaired person using a screen reader. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations which are, therefore, denied.

52.    Defendant's actions constitute willful intentional discrimination against Plaintiff Panarese on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant: has constructed and maintained a Website that is inaccessible to Plaintiff Panarese with knowledge of the discrimination; and/or constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to Plaintiff Panarese; and/or failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff Panarese.

> **RESPONSE:**    Defendant denies the allegations in this paragraph.

53.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

> **RESPONSE:**    Defendant denies the allegations in this paragraph.

54.    Defendant discriminates, and will continue in the future to discriminate, against Plaintiff Panarese on the basis of disability in the full and equal enjoyment of its products, services,

facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations. Unless this Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff Panarese will continue to suffer irreparable harm.

**RESPONSE:**   Defendant denies the allegations in this paragraph.

55.   Defendant's actions were and are in violation of the New York State Human Rights Law and, therefore, Plaintiff Panarese invokes his right to injunctive relief to remedy the discrimination.

**RESPONSE:**   Defendant denies the allegations in this paragraph.

56.   Plaintiff Panarese is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

**RESPONSE:**   Defendant denies the allegations in this paragraph.

57.   Plaintiff is also entitled to reasonable attorneys' fees and costs.

**RESPONSE:**   Defendant denies the allegations in this paragraph.

58.   Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Panarese prays for judgment as set forth below.

**RESPONSE:**   Defendant denies that Plaintiff Panarese is entitled to the relief requested in his prayer for relief.

## COUNT III

**Against Defendant for Declaratory Relief, on behalf of Plaintiffs**

59.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

**RESPONSE:**     This paragraph does not require a responsive pleading, but to the extent it does, Defendant incorporates its responses.

60.     Defendant's website contains access barriers denying blind customers full and equal access to the products and/or services. The website violates 42 U.S.C. §§ 12182, *et seq.,* and N.Y. Exec. Law § 290 *et seq.,* which prohibit discrimination against the blind. A judicial declaration is, therefore, necessary and appropriate.

**RESPONSE:**     Defendant denies the allegations in this paragraph.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand a judgment:

(a)     awarding Plaintiffs statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

(b)     granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYSHRL;

(c)     providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually-impaired;

(d)     awarding attorneys, fees and costs, and other relief; and

(e)     awarding such other relief as this Court deems just and proper.

**RESPONSE:**     Defendant denies that Plaintiffs are entitled to the relief requested in their

prayer for relief.

## AFFIRMATIVE DEFENSES

1.      Defendant pleads the failure of the conditions precedent necessary for Plaintiffs to maintain their claims.

2.      Defendant further pleads that Plaintiffs have suffered no compensable damage or injury.

3.      Defendant further pleads the affirmative defense of unclean hands.

4.      Defendant further pleads that Plaintiffs fail to state a claim for which relief can be granted.

5.      Defendant further pleads that Plaintiffs lack standing.

## PRAYER FOR RELIEF

Defendant respectfully requests that Plaintiffs take nothing by their claims; that the Court deny the relief and recovery sought by Plaintiffs; and that the Court enter judgment in favor of Defendant, finding that:

(a)      Plaintiffs take nothing by their claims;

(b)      The Court awards Defendant actual damages and court costs; and

(c)      The Court awards Defendant all other relief in law and in equity, to which it may be justly entitled.

Dated: March 9, 2023

Respectfully submitted,

JACKSON WALKER LLP

By: _/s/ Joel R. Glover_
    Joel R. Glover
    NY Bar No. 5697487
    1401 McKinney Street, Suite 1900
    Houston, Texas 77010
    (713) 752-4200 – Phone
    (713) 752-4221 – Fax
    jglover@jw.com

    **ATTORNEYS FOR DEFENDANT**
    **MILLA AND ELLA CO., LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 9, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

_/s/ Joel R. Glover_
Joel R. Glover